FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

'02 AUG -1 AM 10: 35

DISTRICT COURT
N.D. OF ALABAMA

TAMIKA CARPENTER,　　　　　　]
　　　　　　　　　　　　　　　　]
　　　Plaintiff,　　　　　　　　]
　　　　　　　　　　　　　　　　]
　　vs.　　　　　　　　　　　　]　　CV-01-N-1772-S
　　　　　　　　　　　　　　　　]
RTM, ALABAMA, INC., D/B/A　　　]
ARBY'S,　　　　　　　　　　　　]
　　　　　　　　　　　　　　　　]
　　　Defendant.　　　　　　　　]

**ENTERED**

AUG 0 1 2002

## Memorandum of Opinion

## I.　Introduction.

This case involves claims brought pursuant to Title VII of the Civil Rights Act of 1964.

Presently before the court is defendant RTM, Alabama, Inc.'s motion for summary judgment,

filed May 14, 2002. [Doc. # 34.]  The issues have been briefed by both parties and are ripe

for determination.  Upon due consideration, the court finds that the motion is due to be

denied.

## II.　Facts.[1]

Defendant RTM Alabama, Inc. ("RTM") owns and operates several Arby's restaurants

in the Birmingham, Alabama, area.[2]  Plaintiff Carpenter applied to work at the Arby's

---

[1] The facts set out below are gleaned from the parties' submission of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. See *Cox v. Administrator U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] For purposes of this memorandum, all of the Arby's restaurants discussed are owned and operated by RTM and located in the Birmingham, Alabama, area.



restaurant in Crestwood and, on March 21, 2001, was hired to work there at the rate of $7.00 per hour.  Orlando Jackson, the Crestwood Arby's manager,[3] told her that she would be working forty hours per week and would be in training to be a manager/team leader. Although Carpenter's management training was started when she began work, it was interrupted upon the hiring of another manager with fast food experience, and, according to Jackson, because the crew did not respect her and felt that she did not know her job. Jackson told Carpenter her training would be completed after the newly hired manager's training was finished.

During her employment at the Crestwood location, Carpenter began a sexual relationship with Jackson.  Carpenter had consensual sex with Jackson on three occasions. After the third time Jackson told Carpenter that he was sleeping with other employees in the Crestwood store and referred to them as his "on the clock hoes."  Carpenter decided to end her relationship with Jackson.  Shortly thereafter, he reduced the hours she was scheduled to work.  She complained to Jackson and he responded that if she "stopped acting like a little bitch and [gave] him some sex," she could get additional hours. Carpenter slept with Jackson a fourth time on May 8, 2001, and she was scheduled for additional hours.

On May 10, 2001, Carpenter filed a charge of discrimination with the EEOC alleging sexual harassment.  After he found out about Carpenter's charge of discrimination, Jackson

---

[3]Besides being the manager of the Crestwood Arby's, Orlando Jackson was an operating partner. Operating partners are the highest ranking members of management at each individual store location, make a financial investment in the store, and are eligible for bonus incentives based on their store's profitability. Operating partners supervise all employees in their restaurants, and have the ability to hire, make work assignments, make schedules, and terminate employees.

told Sandy Kelley, the maintenance person at the Crestwood location, that he was going to cut Carpenter's hours and "run the bitch off." Carpenter admits that during the course of her employment, other employees besides herself complained about their hours being reduced. After Carpenter filed her EEOC charge, Jackson told Carpenter and the other employees in a meeting that their hours had been cut due to low sales volume at the Crestwood location.

Immediately upon receipt of the EEOC charge, on May 16, 2001, RTM began its investigation of Carpenter's allegation that she had been sexually harassed. Jackson was suspended pending the outcome of the investigation. After interviewing Carpenter's witnesses and concluding its investigation, on or about May 20, 2001, Alton Shields, RTM's District Vice President for Operations in Alabama, told Carpenter that RTM could find no one to back her complaint and that her allegations could not be substantiated. RTM also concluded that the reduction in hours experienced by workers at the Crestwood location was based solely on sales fluctuations within that restaurant.

Carpenter was informed, after the investigation, that Jackson was coming back to the store. She told Shields that she was uncomfortable working for Jackson and she agreed to transfer to the Sixth Avenue Arby's location. Shields promised Carpenter, before her transfer, that RTM would make every effort to give her twenty-five hours per week at the Sixth Avenue store. Prior to Carpenter's transfer to the Sixth Avenue store, Jackson called Shirley Parker, the manager at that location to discuss the transfer. Parker told Jackson that her store was fully staffed and that she did not need Carpenter in her store. Later that day, Bobby Knight, Jackson's immediate supervisor, called Parker and requested the Carpenter

transfer. Parker repeated to him what she had told Jackson. Even later on the same day, Shields called Parker about the transfer. Parker again stated that she did not want Carpenter working in her store because her store was fully staffed and she did not want Carpenter working under her. Shields, however, was able to get Parker to find a shift for Carpenter, working Monday through Friday from 11:00 a.m. to 2:00 p.m. Shields did not tell Carpenter anything about his conversation with Parker or the fact that the Sixth Avenue location was already fully staffed.

After her transfer, Carpenter was only scheduled to work on Mondays, Wednesdays, and Fridays between the hours of 11:00 a.m. and 2:00 p.m., even though she was available to work Monday through Friday from 8:00 a.m. to 5:00 p.m. Carpenter made repeated requests for additional hours; however, no additional hours were ever made available to her.[4] In fact, on several occasions, Carpenter was sent home early, and, on June 15, she was not allowed to work at all, even though she had been scheduled to work.

On June 18, 2001, Carpenter provided Parker a letter requesting additional hours and advising that she felt she was being retaliated against because of her complaint of sexual harassment. Carpenter's letter of June 18 advised RTM that she could not continue to work there unless she received additional hours. Parker read the letter and, after contacting Knight, refused to give Carpenter more hours. Carpenter resigned that day. She began employment at the Olive Garden Restaurant on June 21, 2001, at the rate of $7.25 per hour.

---

[4] The defendant argues that Carpenter was scheduled to work Monday through Friday, but that she refused to work Tuesdays and Thursdays. Carpenter, of course, denies this and claims that she was only scheduled to work on Mondays, Wednesdays, and Fridays.

### III.    Standard.

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movants can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322-23. Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions of file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)).

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.  "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249 (citations omitted); *accord Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movants is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## IV.   Discussion.

In her complaint, Carpenter asserted two causes of action against RTM, both arising under Title VII.  First, she alleged that she was subjected to sexual harassment by Orlando Jackson, her manager.  Second, she alleged that RTM, through its agents, retaliated against her for filing a charge with the EEOC. Although the plaintiff appeared to assert both  hostile work environment and quid pro quo sexual harassment claims in her complaint, she has since made clear that she is only pursuing the latter type of sexual harassment.  Her claims are treated separately below.

### A.   Sexual Harassment.

Carpenter argues that she was subjected to sexual harassment by Jackson when, after she stopped having sex with him, he cut her hours and told her that she could have

more hours if she would "stop acting like a bitch" and have sex with him again.[5]  To demonstrate a prima facie case of sexual harassment, a plaintiff must establish the following elements:

> (1) that she belongs to a protected group; (2) that she has been subject to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) that there is a basis for holding the employer liable.

*Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197, 1199 (11th Cir. 2001).  RTM asserts that Carpenter cannot establish the second and fourth elements.

As to the second element, RTM urges that any sexual harassment to which Carpenter was subjected was not unwelcome.  Specifically, it argues that the sexual relationship between Carpenter and Jackson, if there was one, was entirely consensual in nature.  Carpenter, however, has put forth contrary evidence.  Specifically, she notes that, while the first three times that she and Jackson had sex were consensual on her part, the fourth time occurred only as a result of economic coercion.  Her deposition testimony establishes that after the third time she and Jackson had sex, she decided to terminate the relationship.  Upon doing so, Jackson cut her hours.  When she complained to him about her hours, Jackson told her that if she would have sex with him, he would give her more hours.  This evidence demonstrates that the harassment of which Carpenter complains was indeed unwelcome.

As to the fourth element, RTM argues that the cut in hours that Carpenter

---

[5]She also argues that her harassment claim encompasses her demotion from team leader.  However, it appears that this demotion occurred prior to her breaking off the relationship with Jackson, and, as a result, cannot form the basis of her harassment claim, which, she alleges, arose from her ending the relationship.

experienced did not affect a term, condition, or privilege of her employment because several other employees at the Crestwood location had their hours cut around the same time. In support of this proposition, it has set forth evidence that several employees had their hours cut based on a decrease in the Crestwood location's sales volume. However, the same evidence that creates a fact question as to the second element also creates a question of fact as to this element. Specifically, the fact that Jackson cut Carpenter's hours after she stopped having sex with him and told her that she could get more hours if she had sex with him again demonstrates that the reason she experienced a cut in hours was not due to a low sales volume at the restaurant but because she did not want to continue having sex with him. Indeed, she has put forth further evidence that after she had sex with Jackson a fourth time, her hours were subsequently increased. Thus, at the very least, there is a fact question as to this element.

RTM also argues that it is entitled to the affirmative defense made available by the Supreme Court's decision in *Faragher v. City of Boca Raton*, 524 U.S. 775 (1998), in which the Court held that an employer is not liable "if it 'exercised reasonable care to prevent and correct promptly any sexually harassing behavior,' and [the plaintiff] 'unreasonably failed to take advantage of any preventive or corrective opportunities provided by [the employer] or to avoid harm otherwise.'" *Johnson v. Booker T. Washington Broadcasting Service, Inc.*, 234 F.3d 501, 510 (11th Cir. 2000) (quoting *Faragher*, 524 U.S. at 807). This defense, however, is not available when the plaintiff's supervisor has taken a tangible employment action against her. *Id.* In the present case, there is no dispute that Jackson was Carpenter's supervisor. Moreover, it appears to the court that the reduction of her hours constitutes a

8

tangible employment action. As a result, RTM is not entitled to the *Faragher* affirmative defense.

Finally, RTM argues that it has set forth legitimate, non-discriminatory reasons for Jackson's decision to cut Carpenter's hours. It asserts, as it did in regard to the fourth element of the prima facie case, that several employees' hours were cut, including Carpenter's, because sales were down at the Crestwood location. Carpenter has rebutted this assertion, however, because, as noted above, she has set forth evidence that the basis of her reduction in hours was her refusal to have sex with Jackson. Having rebutted RTM's allegedly legitimate reason for cutting her hours, then, the court finds that there are substantial questions of fact that preclude summary judgment on Carpenter's harassment claim.

### B.    Retaliation.

Carpenter also claims that she was subjected to retaliation because she filed a charge with the EEOC alleging harassment. Specifically, she notes that after she filed her charge on May 10, 2001, her hours were reduced even further and she was never allowed to complete management training. To set forth a prima facie case of retaliation, Carpenter must demonstrate that: (1) she was engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the two events. *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001). Bypassing the first two elements, RTM asserts that Carpenter is unable to demonstrate a causal connection between the filing of her charge (engaging in a protective activity) and having her training

9

stopped and her hours cut (suffering an adverse employment action).[6]

As to the period of time following her EEOC charge but preceding her transfer to the Sixth Avenue location, RTM's argument is clearly without merit. In response to RTM's motion, Carpenter submitted the affidavit of Sandy Kelley, the maintenance person at the Crestwood location, who testified therein that after Jackson found out about Carpenter's charge of discrimination, Jackson told him that he was going to cut Carpenter's hours and "run the bitch off." This statement is clearly direct evidence that, while Carpenter was at the Crestwood location, her hours were cut in retaliation for having filed a charge of discrimination with the EEOC.

As to the period of time following her transfer to the Sixth Avenue location, RTM argues that there could be no connection between her decrease in hours and the fact that she filed a charge with the EEOC because Shirley Parker, the manager who made Carpenter's schedule at that store, was unaware that she had filed such a charge. In support, RTM sets forth the deposition of Parker in which she testified in no uncertain terms that she did not learn that Carpenter had filed a charge of discrimination with the EEOC until the last day that Carpenter was employed there, when Carpenter handed her a letter

---

[6]In its initial brief, RTM also argued that because Carpenter did not include an allegation of retaliation in her EEOC charge, she is administratively estopped from raising such a claim now. In response, Carpenter stated that she only seeks recovery for retaliatory actions that occurred after, and as a result of, her filing a charge with the EEOC. She set forth binding Eleventh Circuit case law establishing that if an individual is retaliated against for filing a charge of discrimination with the EEOC, he or she need not file a second charge alleging that retaliation prior to filing suit on the retaliation. In reply, RTM conceded that Carpenter is not administratively estopped from bringing her retaliation claim as it relates to any conduct arising from the filing of her administrative charge. However, it continues to argue that because Carpenter was demoted prior to her filing the charge, she is not entitled to receive damages based on the demotion. The court agrees that damages for retaliation cannot be had in regard to RTM's decision to demote her. However, when she was demoted, she was told that her training would be completed at some later point. Her training was never completed. To the extent that Carpenter is able to prove that the decision to refuse to complete her training was made after she filed her charge with the EEOC, and based thereon, damages for such refusal are properly recoverable.

10

and demanded more hours.

Were it true that Parker did not know of Carpenter's charge, the court would probably be required to find that there was no connection between the charge and the decrease in hours that Carpenter experienced. However, Carpenter has pointed to certain evidence that tends to show that, in spite of her declarations to the contrary, Parker knew, prior to Carpenter's transfer, that Carpenter had filed a charge with the EEOC. Specifically, during the deposition of Alton Shields, the following exchange occurred:

Q:    All right.  So did you effectuate [Carpenter's] transfer?
A:    I did.
Q:    Did you talk with Shirley Parker?
A:    Yes, I did.
Q:    Did you tell her you were transferring an employee?
A:    I did.
Q:    Did you tell her why she was being transferred?
A:    I did.
Q:    That there has been an allegation of sexual harassment?
A:    Yes.

Shields Dep. at 189.  Shields goes on to state that he did not go into detail regarding the sexual harassment allegations with Parker.  However, the court finds that, regardless of the amount of detail he allegedly went into with Parker regarding Carpenter's allegations, a reasonable jury could infer from his above-quoted testimony that he told Parker about Carpenter's EEOC charge.[7]  The fact that there is evidence that Parker knew of the charge prior to Carpenter's transfer, coupled with the close proximity in time between the charge

---

[7]Carpenter also notes that it is an incredible assertion that Parker was not told of the EEOC charge prior to Carpenter's transfer in light of the fact that she received, on the same day, telephone calls from Jackson, Knight, and Shields, all three of whom contacted her for no other reason than to persuade her to accept Carpenter's transfer, a move that she strongly resisted.  Although the court agrees, it finds that Shields' deposition testimony is sufficient evidence that Parker knew of the charge prior to the transfer.

and her transfer to the Sixth Avenue restaurant, where she was only scheduled to work nine hours per week, renders the third element of retaliation, the existence of a causal connection, a fact question for the jury and inappropriate for summary judgment. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("We have plainly held that a plaintiff satisfies [the causation element] if he provides sufficient evidence that the decision-maker became aware of the protected conduct, and that there was close temporal proximity between this awareness and the adverse employment action.")

RTM also argues that even if Carpenter can demonstrate a prima facie case of retaliation, she has not rebutted its legitimate, non-discriminatory reasons for its actions. It asserts that Carpenter's hours were cut while she was at the Crestwood location due to reduced volume at that location. It asserts that her hours were further reduced after her transfer to the Sixth Avenue location because, although she was scheduled to work Monday through Friday from 11:00 a.m. to 2:00 p.m., she refused to work on Tuesdays and Thursdays. Carpenter, however, has successfully disputed these legitimate reasons. As noted in the previous section, the first reason advanced by RTM fails because Carpenter has set forth evidence that the only reason Jackson cut her hours was because she stopped having sex with him. The second reason fails because she has set forth evidence that she was available to work Monday through Friday from 8:00 a.m. to 5:00 p.m. and that she never refused to work on Tuesdays and Thursdays while at the Sixth Avenue location. As a result, the court finds that summary judgment is due to be denied as to Carpenter's retaliation claim.

12

## V.    Conclusion.

Based on the foregoing, the court finds that the defendant's motion for summary judgment is due to be denied. A separate order will be entered contemporaneously with this memorandum of opinion.

Done, this 2 of July, 2002.

EDWIN L. NELSON
UNITED STATES DISTRICT JUDGE

13